**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Port Neches Fuels, LLC,[1] | Case No. 22-10500 (CTG) |
| Debtor. | |
| Edgar C. Gentle, III, as GUC Trustee of the TPC GUC Trust, | |
| Plaintiff, | |
| vs. | Adv. No. **Refer to Summons** |
| Enverus, Inc., | |
| Defendant. | |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Edgar C. Gentle, III, as GUC Trustee (the "Plaintiff" or "Trustee") of the TPC GUC Trust (the "Trust"), by and through his undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Enverus, Inc. (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges the following upon information and belief:

**NATURE OF THE CASE**

1.    Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number is as follows: Port Neches Fuels, LLC (1641). The Reorganized Debtor's corporate headquarters and mailing address is 500 Dallas St., Suite 2000, Houston, TX 77002.

1

proceedings of TPC Group Inc. and its affiliated debtors (collectively, the "Debtors")[2] pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code") and, subject to proof, (b) any transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2.      In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of Plaintiff's rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). The underlying bankruptcy case is captioned *In re: Port Neches Fuels, LLC*, Case No. 22-10500 (CTG).

4.      This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

5.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409(a).

---

[2] The original filing Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: TPC Group Inc. (3618); TPC Holdings, Inc. (7380); TPC Group LLC (8313); Texas Butylene Chemical Corporation (7440); Texas Olefins Domestic International Sales Corporation (4241); TPC Phoenix Fuels LLC (9133); Port Neches Fuels, LLC (1641); and TP Capital Corp. (6248). The cases were previously jointly administered under the TPC Group, Inc. bankruptcy case, Case No. 22-10493. On March 28, 2023, the Court entered an order closing the cases of the jointly administered Debtors except for the case of debtor Port Neches Fuels, LLC, Case No. 22-10500 (Case No. 22-10493, D.I. 1488).

6.     The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.     Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that he does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**PROCEDURAL BACKGROUND**

8.     On June 1, 2022 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

9.     On June 2, 2022, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b). The cases were jointly administered under the TPC Inc. Group bankruptcy case, Case No. 20-10493 [Case No. 22-10493, D.I. 113].

10.    On December 1, 2022, the Court entered an order (the "Confirmation Order") confirming the *Modified Second Amended Joint Chapter 11 Plan of TPC Group Inc. and Its Debtor Affiliates* (the "Plan") and all Plan supplements, including the GUC Trust Agreement. [Case No. 22-10493, D.I. 1281].

11.    The effective date of the Plan (the "Effective Date") occurred on December 16, 2022. [Case No. 22-10493, D.I. 1333]. In accordance with the Plan and Confirmation Order, the TPC GUC Trust (the "Trust") was established as of the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain GUC Trust Agreement.[3]

---

[3] *See* Case No. 22-10493, D.I. 1332, Ex. L.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or GUC Trust Agreement.

12.     Pursuant to paragraph 39 of the Confirmation Order and Section 5.20 of the Plan, the GUC Trust Assets (as defined in the Plan), including all Assigned Causes of Action under Chapter 5 of the Bankruptcy Code, were transferred to the Trust.

13.     Pursuant to Section 4.4 of the Plan and Section II.B of the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of TPC Group Inc. and Its Debtor Affilates* (the "Disclosure Statement"),[4] General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

**THE PARTIES**

14.     Pursuant to the Plan, Confirmation Order, and GUC Trust Agreement, Plaintiff was appointed as the Trustee.  Plaintiff is authorized and has standing, among other things, to prosecute and settle certain causes of action under chapter 5 of the Bankruptcy Code, including this avoidance action.

15.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that designed and developed software solutions to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 2901 Via Foruna, Suite 100, Austin, Texas 78746. Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of Texas.

**FACTUAL BACKGROUND**

16.     As more fully discussed in the Disclosure Statement, the Debtors were a leading producer and processor of value-added petrochemical raw materials such as C4 hydrocarbons. The Debtors' products were sold to producers in a wide range of markets, including synthetic rubber,

---

[4] Case No. 22-10493, D.I. 826.

fuels, lubricant additives, plastics, and surfactants. The Debtors also operated several production and/or processing facilities and maintained approximately 230 miles of feedstock and product pipelines. One of the production facilities, located in Port Neches, Texas, was shut down for processing after several explosions occurred at the plant on November 27, 2019.

17.    Prior to the Petition Date, the Debtors, as producer of value-added petrochemical raw materials, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services. The Debtors also regularly paid for services used to facilitate its business.

18.    The Debtors' financial difficulties that led to the decision to file for chapter 11 bankruptcy protection are attributable to a combination of factors, both company-specific and market related, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. A summary of the Debtors' prepetition operations, debt structure, and factors that led to the Bankruptcy Case are set forth in the Disclosure Statement and are incorporated herein by reference.

19.    As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, transfer, and disbursement of funds in the Debtors' business.[5] As of the Petition Date, the Cash Management System consisted of eleven (11)[6] bank accounts (the "Bank Accounts") maintained by the Debtors at Bank of America, N.A. ("BOA").

---

[5] *See Motion of Debtors For Interim and Final Orders (I) Authorizing Debtors to (A) Continue Their Existing Cash Management System, (B) Maintain Existing Business Forms, (C) Continue Intercompany Arrangements, (D) Continue Using P-Cards; and (E) Pay Bank Fees (II) Granting an Extension of Time to Comply With 11 U.S.C. § 345(b); and (III) Granting Related Relief*, incorporated herein by reference (the "Cash Management Motion") [Case No. 22-10493, D.I. 9].

[6] An additional deposit account was maintained by non-Debtor TPC All for One Foundation, a 501(c)(3) charitable organization. *See* Disclosure Statement.

20.     Among these Bank Accounts, disbursements to vendors were made from account ending 5528, held by TPC Group LLC at BOA (the "Disbursement Account"). [*See* Cash Management Motion]. To the extent TPC Group LLC paid any affiliated Debtors' debts, it recorded the intercompany balances by book entry. *Id.*

21.     The Debtors drew upon the Disbursement Account to pay for their operational costs, including payment to their vendors, suppliers, distributors, and other creditors, including Defendant.

22.     During the ninety (90) days before the Petition Date, that is between March 3, 2022 and June 1, 2022 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

23.     Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

24.     One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $30,986.40 (the "Transfer" or "Transfers"). The details of each Transfer

6

are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

25.     Plaintiff is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

26.     On or about April 5, 2023, Plaintiff, through counsel, sent a demand letter (the "Demand Letter") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to Defendant pursuant to section 547(c) of the Bankruptcy Code, and requested that if Defendant had evidence to support any affirmative defenses, it provide this evidence so Plaintiff could review the same.

27.     Plaintiff also performed Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of Plaintiff's due diligence, Plaintiff reviewed the books and records in Plaintiff's possession and identified that Defendant potentially has $0.00 in invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an affirmative defense, for which Defendant bears the burden of proof under section 547(g). The potential new value is based on the invoice date in the Debtors' books and records. As the dates for new value are often based on the shipping dates for goods and the actual dates of service for services, this new value amount is subject to adjustment. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to this new value amount.

28.     Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has

7

determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

29.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

30.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

31.     As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $30,986.40.

32.     Each Transfer was made from the Disbursement Account described *supra,* and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

33.     Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A the goods and/or services identified in this Complaint and in

the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

34.    Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

35.    Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

36.    Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

37.    Each Transfer was made during the Preference Period, as set forth on Exhibit A.

38.    As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

39.    In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

40.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

41.     To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by one Debtor without a corresponding transfer into the payment account by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A.      The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B.      The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

C.      The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

42.     Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

43.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

44.     Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and/or any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

45.      Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

46.     Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

<b><u>COUNT IV</u></b><br><b>(Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))</b>

47.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Claim for Relief.

48.     Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

49.     Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

50.     Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

51.     Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously

allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A.      On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.      On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and

C.      Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: October 3, 2023

                                        **BIELLI & KLAUDER, LLC**

                                        By: /s/ *David M. Klauder*
                                        David M. Klauder, Esq. (#5769)
                                        1204 N. King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 803-4600
                                        Fax: (302) 397-2557
                                        Email: dklauder@bk-legal.com

                                        *-and-*

12

**ASK LLP**

By: /s/ *Joseph L. Steinfeld, Jr.*

Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Nicholas C. Brown, Esq., NC SBN 38054
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3867
Fax: (651) 406-9676
Email: nbrown@askllp.com

*-and-*

Edward E. Neiger, Esq.
60 East 42nd Street, 46th Fl.
New York, NY  10165
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for Plaintiff*